

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| BROCK SMITH, | ) | No. ED109734 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable Virginia W. Lay |
| ST. LOUIS COUNTY POLICE, ET AL., | ) | |
| | ) | |
| Respondent. | ) | Filed: June 7, 2022 |

## I.    INTRODUCTION

Brock Smith ("Smith") appeals from the judgment of the Circuit Court of St. Louis County, which denied his petition for removal from the Missouri Sex Offender Registry (the "Registry") pursuant to § 589.401.[1]  In his sole point on appeal, Smith argues that the circuit court erred in denying his petition because he is a "tier I" sex offender who is not required to register for life, but rather, only for a period of ten years, and he otherwise satisfied the requirements for removal from the Registry under § 589.401.

We reverse and remand.

## II.    FACTUAL AND PROCEDURAL HISTORY

In May of 2005, the State charged Smith with the offense of "sexual misconduct in the first degree."  At the time of the offense, "sexual misconduct in the first degree" (a/k/a "first-degree

---

[1] All statutory references are to RSMo Cum Supp. (2021), unless otherwise specified.

sexual misconduct") was codified under § 566.090, RSMo (2004), which was defined as "purposely subject[ing] another person to sexual contact without that person's consent." *State v. Ward*, 485 S.W.3d 380, 381 (Mo. App. E.D. 2016) (alteration in original). In addition, the term "sexual contact," as used in § 566.090, RSMo (2004), was defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." § 566.010(3), RSMo (2004); *see also State v. Love*, 134 S.W.3d 719, 722 (Mo. App. S.D. 2004).

On December 18, 2005, Smith pleaded guilty to the charged offense of "sexual misconduct in the first degree," and was granted a suspended imposition of sentence and placed on probation for two years, which he successfully completed. As a result of his guilty plea, however, Smith was required to submit his name and other required information to the Registry pursuant to the Missouri Sex Offender Registration Act—§ 589.400 *et seq.*—("MO-SORA"), which he did on a timely basis and fulfilled all applicable requirements thereunder.[2]

On January 20, 2021, Smith filed his *Petition for Removal From Sex Offender Registry* ("Petition"), which requested that he be removed from the Registry pursuant to § 589.401. In his Petition, Smith specifically alleged that he is a "Tier 1 Sexual Offender" under § 589.414, therefore he is entitled to removal because he satisfied all applicable registration requirements and more than ten years had passed since the date he was required to register for his most recent (and only) offense requiring registration. Smith's Petition named the defendants required under § 589.401.6, including the Missouri State Highway Patrol and the St. Louis County Police Department

---

[2] We note that subsequent to Smith's guilty plea, the offense previously known as "first-degree sexual misconduct" was transferred to § 566.101, RSMo (2013), and the offense was renamed "second-degree sexual abuse." *Ward*, 485 S.W.3d at 380 n.1. However, the elements of the offense were not altered. *Id.*; *accord Dixon v. Missouri State Highway Patrol*, 583 S.W.3d 521, 524 (Mo. App. W.D. 2019).

2

(collectively the "State"). In its answer to the Petition, the State denied all of Smith's allegations and requested that the Petition be dismissed.

On May 12, 2021, Smith, his attorney, and the State's attorney appeared for a hearing on the Petition. Evidence was adduced, exhibits were presented and admitted, and witness testimony was elicited, including Smith's testimony that he had complied with all the requirements under § 589.401 for removal from the Registry. The State's sole objection to the Petition was that Smith was not permitted to have his name removed from the Registry because, even though he is indeed a "tier I" sex offender under MO-SORA, he is required to register under the separate requirements of the Federal Sex Offender Registration and Notification Act, 34 U.S.C. § 20901 *et seq.* ("SORNA"),[3] and as such, he is required to remain on the Registry for his entire life given how some Missouri courts have interpreted MO-SORA in conjunction with the separate and independent federal registration requirements under SORNA. In support, the State primarily relied on the Western District's recent decision in *Selig v. Russell*, 604 S.W.3d 817 (Mo. App. W.D. 2020) *transfer denied* (May 28, 2020) *transfer denied* (Sept. 1, 2020), for its proposed interpretation and application of MO-SORA.

On May 20, 2021, the circuit court entered its *Order and Judgment* in connection with the Petition (the "Judgment"), which denied Smith's request for removal from the Registry. The circuit court agreed with the State and found that MO-SORA requires lifetime registration for anyone, including Smith, who has ever had to register in Missouri for an offense that required registration under SORNA, citing *Wilkerson v. State*, 533 S.W.3d 755, 758 (Mo. App. W.D. 2017),

---

[3] Effective September 1, 2017, "SORNA was recodified without substantive change into Title 34 of the U.S. Code." *State v. Doolin*, 572 S.W.3d 112, 120 n.12 (Mo. App. E.D. 2019). "Prior to September 1, 2017, SORNA was codified in 42 U.S.C.A. §§ 16911 *et seq.*" *Id.* Certain cases cited herein internally cite to the prior Title 42 codification of SORNA, and where appropriate we have provided the corresponding Title 34 codification of the cited provision(s).

*Selig*, 604 S.W.3d at 824–25, and *Hixson v. Missouri State Highway Patrol*, 611 S.W.3d 923 (Mo. App. E.D. 2020), in support. This appeal follows.

### III. STANDARD OF REVIEW

As in any court-tried case, "[t]he judgment of the trial court will be upheld on appeal, unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Doe v. Isom*, 429 S.W.3d 436, 439 (Mo. App. E.D. 2014) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Questions of statutory interpretation are reviewed *de novo*." *Dixon v. Missouri State Highway Patrol*, 583 S.W.3d 521, 523 (Mo. App. W.D. 2019) (quoting *Petrovick v. State*, 537 S.W.3d 388, 390 (Mo. App. W.D. 2018)) (italics added); *accord Bacon v. Missouri State Highway Patrol*, 602 S.W.3d 245, 248 (Mo. App. E.D. 2020). "Any time a court is called upon to apply a statute, the primary obligation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Dixon* 583 S.W.3d at 523–24 (quoting *State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 604-05 (Mo. banc 2019)); *accord Bacon*, 602 S.W.3d at 248. "This Court interprets statutes in a way that is not hypertechnical but instead is reasonable and logical and gives meaning to the statute and the legislature's intent as reflected in the plain language of the statute at issue." *Dixon*, 583 S.W.3d at 524 (quoting *IBM Corp. v. Dir. of Revenue*, 491 S.W.3d 535, 538 (Mo. banc 2016)). "We are only permitted to look beyond the plain meaning of the statute when the language is ambiguous or would lead to an absurd or illogical result." *Bacon*, 602 S.W.3d at 248.

### IV. DISCUSSION

This case requires us to determine whether a "tier I" sex offender under both MO-SORA and SORNA, who is otherwise eligible for removal from the Registry after satisfying the

4

requirements of § 589.401, must nonetheless remain on the Registry for the remainder of his life due to the purported "interplay" between the requirements of MO-SORA and SORNA, as certain prior decisions of Missouri appellate courts have held, *see, e.g.*, *Wilkerson*, 533 S.W.3d at 761-62; and *Selig*, 604 S.W.3d at 824-25, and as the circuit court held. However, before directly addressing the merits of Smith's sole point on appeal, an overview of SORNA and MO-SORA, as well as several relevant Missouri cases interpreting the same, is warranted for proper context.

## A.     General provisions of SORNA and MO-SORA.

"In 2006, the United States Congress passed, and the President signed, the Adam Walsh Child Protection and Safety Act of 2006 ('AWA')." *Isom*, 429 S.W.3d at 438 (citing Pub. L. No. 109-248 (2006)). The stated purpose of the AWA is to protect the public from "sex offenders and offenders against children." *Id*. To that end, "Title I of AWA established and created the federal Sex Offender Registration and Notification Act ('SORNA')," which is a "comprehensive national system for the registration of those offenders." *Id*. (citing 42 U.S.C. § 16901 *et seq.*[4]); *see also Doe v. Neer*, 409 S.W.3d 451, 453 (Mo. App. E.D. 2013) (similarly recognizing that SORNA was enacted in July 2006 "to establish a comprehensive national system for the registration of sex offenders"). SORNA "requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." *Isom*, 429 S.W.3d at 438 (quoting *Reynolds v. U.S.*, 565 U.S. 432, 434 (2012)).

"SORNA divides sex offenders into three categories: tier I, tier II, and tier III." *James v. Missouri State Highway Patrol*, 505 S.W.3d 378, 381 (Mo. App. E.D. 2016) (citing 42 U.S.C.

_____

[4] *See* 34 U.S.C. 20901.

§ 16911(2)–(3)[5]).  "Tier I is the least severe tier and includes all sex offen[ses] that are not tier II or tier III."  *Id*.  Tier I offenders are generally required to register for 15 years, *id*. at 381–82 (citing 42 U.S.C. § 16915(a)(1)[6]), unless they qualify for the "clean record" reduction, in which case the registration period is ten years, *id*. at 382 (citing 42 U.S.C. § 16915(b)(2)(A)[7]).  The "clean record" reduction under SORNA applies to offenders "who have not been convicted of an offense 'for which imprisonment for more than 1 year may be imposed,' who have not subsequently been 'convicted of any sex offense,' and have completed any applicable probation or parole periods and 'an appropriate sex offender treatment program.'"  *Id*. (citing 42 U.S.C. § 15915(b)(1)[8]).  Under SORNA, tier II offenders are required to register for 25 years, and tier III offenders are required to register for their lifetimes.  34 U.S.C. § 20915(a)(2) and (3).

Although SORNA mandates that each state maintain a registry of "sex offenders" (as defined therein), the federal government itself does not maintain its own registry separate from those maintained by the states.  *Selig*, 604 S.W.3d at 821.  Rather, "SORNA establishes requirements for the registration of sex offenders that each state must comply with in order to receive certain federal funds."  *Id*.; *see also U.S. v. Felts*, 674 F.3d 599, 602 (6th Cir. 2012) ("Rather than establishing a federal agency to implement SORNA, Congress, through its spending power, U.S. Const. Art. I, § 8, directed all states and the District of Columbia to create local registries that comply with specific national standards.").

---

[5] *See* 34 U.S.C. 20911(2)-(4).

[6] *See* 34 U.S.C. 20915(a)(1).

[7] *See* 34 U.S.C. 20915(b)(2)(A).

[8] *See* 34 U.S.C. 20915(b)(1).

"Individuals subject to SORNA's registration requirements are identified in 42 U.S.C. § 16911(1),[9] which provides that '[t]he term "sex offender" means an individual who was convicted of a sex offense.'" *James*, 505 S.W.3d at 381 (alteration in original); *accord Wilkerson*, 533 S.W.3d at 758. "A sex offense is defined as 'a criminal offense that has an element involving a sexual act or sexual contact with another.'" *Id.* (quoting 42 U.S.C. § 16911(5)(A)(i)[10]); *see also Isom*, 429 S.W.3d at 439–40 (analyzing whether a particular offense constituted a "sex offense" under SORNA).

"In order to accomplish this purpose, SORNA requires states to 'maintain a jurisdiction-wide sex offender registry' that complies with the standards set forth by SORNA." *Isom*, 429 S.W.3d at 438 (quoting 42 U.S.C. § 16912(a)[11]). "In Missouri, the corresponding registry to that of SORNA's federal registry has been in force since 1995," and was established pursuant to MO-SORA. *Id.* Specifically, "[MO-]SORA was created to protect children from 'violence at the hands of sex offenders' and 'to respond to the known danger of recidivism among sex offenders.'" *Hixson*, 611 S.W.3d at 925 (quoting *Doe v. Phillips*, 194 S.W.3d 833, 839 (Mo. banc 2006)). "To achieve its goals, [MO-]SORA subjected individuals convicted of committing specified sexual offenses to registration and notification requirements." *Id.*

It is important to note that while MO-SORA has been in effect since 1995 and pre-dates SORNA, it has been amended several times, including as recently as August 28, 2018 (the "2018 Amendments"). Many of those amendments are directly relevant to this case. In particular, § 589.400.1, specifies the persons to whom MO-SORA generally applies, including individuals convicted or otherwise adjudicated of any of the offenses specified therein. While some of the

---

[9] *See* 34 U.S.C. 20911(1).

[10] *See* 34 U.S.C. 20911(5)(A)(i).

[11] *See* 34 U.S.C. 20912(a).

7

provisions of § 589.400.1 were amended by the 2018 Amendments, sub-part (7), which is at the core of this case, was <u>not</u> changed in any way. Section 589.400.1(7), expressly provides that MO-SORA applies to any person who, *inter alia*, "has been or is required to register under tribal, **<u>federal</u>**, or military law" (emphasis added).

Prior to the 2018 Amendments, § 589.400.3, RSMo (2005–2017), provided that the registration requirements of MO-SORA were "lifetime registration requirements," unless the offender was subject to one of the limited exceptions listed therein (which are not relevant to this case). However, the 2018 Amendments drastically altered the time period that sex offenders who were subject to MO-SORA were required to remain on the Registry, and understanding these changes is critical to the disposition of this appeal.

**B.    The 2018 Amendments to MO-SORA.**

For purposes of this case, the most important change that the 2018 Amendments had on MO-SORA was to divide sex offenders into three "tiers" based on the severity of the offenses for which they were convicted. *See* §§ 589.414.5 (addressing tier I), 589.414.6 (addressing tier II), and 589.414.7 (addressing tier III). As further discussed below, unlike the pre-amendment version of MO-SORA, the 2018 Amendments "specified that only offenders in the highest tier—tier III—would be subject to a lifetime registration obligation." *Dixon*, 583 S.W.3d at 525; *accord Hixson*, 611 S.W.3d at 925–26; *J.B. v. Vescovo*, 632 S.W.3d 861, 863–64 (Mo. App. W.D. 2021). Missouri courts have expressly recognized that the 2018 Amendments "align" MO-SORA more closely with the three-tiered registration requirements of SORNA. *Hixson*, 611 S.W.3d at 925.

Under Missouri's three-tiered system, "[t]ier I contains the 15 least serious offenses, requires annual check-ins to law enforcement, and allows offenders to petition for removal from

8

the registry after 10 years." *Id.* (citing §§ 589.401.4(1) and 589.414.5).[12] "Tier II covers 13 offenses and certain repeat offenders, requires semiannual check-ins, and allows offenders to petition for removal from the registry after 25 years." *Id.* (citing §§ 589.401.4(2) and 589.414.6). "Finally, tier III covers the 36 most serious offenses, requires check-ins every 90 days, and requires lifetime registration (unless the offender committed the offense as a juvenile)." *Id.* (citing §§ 589.401.4(3) and 589.414.7). *See also Bacon*, 602 S.W.3d at 247 (discussing the new three-tiered system of MO-SORA in greater detail), and *Dixon*, 583 S.W.3d at 525 (similarly discussing the new three-tiered system).

The following key provision was also added to MO-SORA by the 2018 Amendments: "Any person currently on the sexual offender registry for having been adjudicated for a tier I or II offense or adjudicated delinquent for a tier III offense or other comparable offenses listed under [§] 589.414 may file a petition [for removal] under [§] 589.401." § 589.400.10 (alterations added).[13]

As alluded to in § 589.400.10, in 2018 the General Assembly also added an entirely new section—§ 589.401—whereby tier I and tier II offenders can now file a petition to have their name removed from the Registry once they have been registered for the appropriate period of time and complied with several other detailed requirements of the new section. Specifically, § 589.401.1 provides as follows: "A person on the sexual offender registry may file a petition in the division

---

[12] Although § 589.400.4(1) generally provides that a tier I sex offender must be registered for 15 years, § 589.400.5, which mirrors 34 U.S.C. § 20915(b), provides that a tier I sex offender's registration period may be reduced by five years if the offender maintains a "clean record" for ten years, which requires the offender to: (1) not be adjudicated of any offense for which imprisonment for more than one year may be imposed; (2) not be adjudicated of any sex offense; (3) successfully complete any periods of supervised release, probation, or parole; and (4) successfully complete the attorney general's sex offender treatment program. *See also Bacon*, 602 S.W.3d at 247 (recognizing that, pursuant to § 589.400.5, "[t]he registration period can be reduced to ten years if the offender maintains a clean record").

[13] It is worth noting that an "adjudication," as that term is used in MO-SORA, "includes a suspended imposition of sentence following a guilty plea." *Bacon*, 602 S.W.3d at 247 n.1 (citing *Dixon*, 583 S.W.3d at 523 n.2).

9

of the circuit court in the county or city not within a county in which the offense requiring registration was committed to have his or her name removed from the sexual offender registry."

In addition, § 589.401.4 provides that a petition filed pursuant to this new section shall be dismissed without prejudice if the following time periods have not elapsed since the date the person was required to register for his or her most recent offense: (1) for a tier I offense, 10 years; (2) for a tier II offense, 25 years; and (3) for a tier III offense adjudicated delinquent, 25 years. *See also Bacon*, 602 S.W.3d at 247. However, § 589.401.3 further provides that, "a person required to register as a tier III offender shall not file a petition under this section unless the requirement to register results from a juvenile adjudication." The remaining provisions of § 589.401 contain the other requirements for filing a petition for removal from the Registry.

The new three-tiered system under MO-SORA is especially important because, prior to the 2018 Amendments, "[MO-]SORA treated all sexual offenses the same and imposed on all offenders a lifetime registration requirement, with limited exceptions." *Hixson*, 611 S.W.3d at 925 (quoting *Bacon*, 602 S.W.3d at 247). Specifically, each of the prior versions of MO-SORA that were in effect from 2005 through August 27, 2018, provided as follows:

> The registration requirements of [§§] 589.400 through 589.425 are **lifetime** registration requirements unless:
>
> (1) All offenses requiring registration are reversed, vacated or set aside;
> (2) The registrant is pardoned of the offenses requiring registration;
> (3) The registrant is no longer required to register and his or her name shall be removed from the registry under the provisions of subsection 6 of this section; or
> (4) The registrant may petition the court for removal or exemption from the registry under subsection 7 or 8 of this section and the court orders the removal or exemption of such person from the registry.

§ 589.400.3, RSMo (2005–2017) (emphasis added).

As referenced in sub-part (4) of § 589.400.3, prior to the 2018 Amendments, a sex offender could only petition for removal from the lifetime registration requirement as follows:

- If the offender was on the Registry for committing the following offenses, and no physical force or threat of force was used in their commission, then he or she could petition for removal after **ten (10) years**: promoting prostitution in the second degree, promoting prostitution in the third degree, public display of explicit sexual material, and statutory rape in the second degree. § 589.400.7, RSMo (2005–2017).

- If the offender was on the Registry for committing any of the offenses listed in § 589.400.1[14], and the offender was age 19 or younger and the victim was age 13 or older at the time of the offense and no physical force or threat of physical force was used in the commission of the offense, then the offender could petition for removal after **two (2) years**. § 589.400.8, RSMo (2005–2017).

In addition, for a sex offender to be removed from the Registry pursuant to the provisions of either § 589.400.7 or § 589.400.8, the offender had to demonstrate that he or she "is not a current or potential threat to public safety." § 589.400.9, RSMo (2005–2017); *see also Wilkerson*, 533 S.W.3d at 758.

Missouri courts have specifically recognized the following regarding the effect of the 2018 Amendments:

> The legislature intended for those currently on the registry to get the benefit of the new shorter registration time periods for offenses that are now deemed to be in the lower severity tiers: "any person currently on the sexual offender registry for having been adjudicated for a tier I or II offense … or other comparable offenses listed under [§] 589.414 may file a petition under [§] 589.401."

*Bacon*, 602 S.W.3d at 247 (quoting § 589.400.10). This Court in *Bacon* further recognized that, "[t]he restricting of [MO-]SORA into tiers in 2018 indicates that the legislature recognizes that not all sex offenses are equally severe and not all sex offenders need to be monitored by way of registration for the same amount of time." *Id*. at 250 (alterations added). This Court in *Hixson*

---

[14] Under the pre-amendment versions of § 589.400.1, RSMo (2005-2017), a wide range of sexual and other related offenses, including most offenses under chapter 566, were subject to registration under MO-SORA.

likewise recognized that, "to account for the fact that newly classified tiers I and II offenders no longer are required to remain on the registry for their lifetimes, [MO-]SORA allows those offenders to seek removal under [§] 589.400.10." 611 S.W.3d at 925–26 (alterations added).

Finally, § 589.401.17 was added as a new sub-section to MO-SORA in connection with the 2018 Amendments, and provides as follows regarding the effect of a judgment issued pursuant to § 589.401:

> Any person subject to the judgment requiring his or her name to be removed from the sexual offender registry is not required to register under [§§] 589.400 to 589.425 unless such person is required to register for an offense that was different from that listed on the judgment of removal.

## C.     Smith's eligibility for removal from the Registry under § 589.401.

When Smith pled guilty to "sexual misconduct in the first degree" in 2005, he was initially subject to MO-SORA's lifetime registration requirement. *See* § 589.400.3, RSMo (2005–2017). However, upon the enactment of the 2018 Amendments, sex offender registration times varied depending on which tier the offense was classified in pursuant to § 589.400.4 and § 589.414, and not the reason the offender is subject to MO-SORA under § 589.400.1 in the first place. Smith's offense, "second-degree sexual abuse" under § 566.101, is included as one of the tier I sex offenses under MO-SORA, provided the punishment is less than one year, *see* § 589.414.5(c).[15] As noted in footnote 2 above, when Missouri's criminal code was revised in 2013, the offense of "first-degree sexual misconduct" under § 566.090, RSMo (2004), was transferred to § 566.101, RSMo (2013), and was renamed "second-degree sexual abuse," with the elements remaining the same. *Ward*, 485 S.W.3d at 380 n.1; *accord Dixon*, 583 S.W.3d at 524. Therefore, the parties in this

---

[15] As noted, Smith was granted a suspended imposition of sentence and placed on probation for two years. This offense is generally a class A misdemeanor, unless it is an "aggravated sexual offense," in which case it becomes a class E felony. However, Smith was not charged with any of the aggravating circumstances listed in § 566.010(1), as the information alleged that Smith "purposefully subjected [victim] to sexual contact through the clothing without [victim's] consent." Thus, Smith was only charged with a class A misdemeanor.

12

case do not dispute that Smith is a tier I sex offender under MO-SORA, and we agree that such categorization is appropriate. *See Austin v. Missouri State Highway Patrol*, 638 S.W.3d 609, 611 n.3 (Mo. App. W.D. 2022).

**D.    The circuit court's Judgment denying Smith's Petition for removal.**

On the basis of the 2018 Amendments, Smith filed his Petition for removal from the Registry pursuant to § 589.401, which alleged that he is a tier I offender, that more than ten years had passed since he was required to register for his most recent (and only) offense, and that he met the other criteria for removal (which the State does not dispute). However, the circuit court denied Smith's Petition after finding that Smith was a "sex offender" under SORNA because his conviction for "sexual misconduct in the first degree" constituted a "sexual offense" under 34 U.S.C. § 20911(5)(A). In support, the circuit court cited *Wilkerson*, 533 S.W.3d at 758. Because Smith is a tier I sex offender under SORNA, he is only required to register for 15 years, *see* 34 U.SC. § 20915(a)(1), unless he qualifies for a "clean record" reduction, *see* 34 U.S.C. § 20915(b)(1). However, because Smith has been on the Registry for more than 15 years, there is no need to address whether he qualifies for a "clean record" reduction under SORNA.

The circuit court further found that due to Smith's federal registration requirement under SORNA, he is "ineligible" for removal from the Registry, specifically noting that "[t]he way the statute is drafted dictates that 'an offender is subject to a lifetime registration obligation under State law, if he or she was ever required to register under federal law." In support, the circuit court again cited *Wilkerson*, 533 S.W.3d at 761, but did not cite to any specific statutory provisions or otherwise explain exactly how that case supports this critical conclusion of law. More importantly, the circuit court further noted that "[t]his is true even under the current 'tiered' system enacted by the legislature in 2018," citing *Selig*, 604 S.W.3d at 824–25, and *Hixson*, 611 S.W.3d at 923, but

13

also without explanation. The circuit court concluded that "[Smith's] requirement to register under SORNA results in required lifetime registration in the State of Missouri. Thus, [Smith] is prohibited from seeking relief under [§] 589.401."

Although not expressly cited in the Judgment, the circuit court presumably relied on the relevant part of § 589.400.1(7) in denying Smith's Petition, as this provision was specifically discussed during the May 12, 2021, hearing on Smith's Petition. Section 589.400.1(7) provides that MO-SORA generally applies to, *inter alia*, any person who "has been or is required to register under tribal, federal, or military law." This particular provision has been interpreted and applied in several Missouri appellate court decisions since at least 2009, including two of the three cases cited by the circuit court in the Judgment, *Wilkerson* and *Selig*. However, as further discussed below, § 589.400.1(7) should <u>not</u> be interpreted as requiring lifetime registration for tier I and II sex offenders under MO-SORA and SORNA who are otherwise eligible for removal from the Registry pursuant to § 589.401. To the extent *Selig* holds or otherwise suggests that lifetime registration is required for tier I and II sex offenders under MO-SORA simply because of their separate federal registration requirement under § 589.400.1(7), we disagree with the Western District on that basis and decline to follow this case or adopt its rationale. Our research has revealed no other appellate court decisions interpreting § 589.400.1(7) in light of the 2018 Amendments.[16]

---

[16] That said, we acknowledge that on May 3, 2022, the Western District handed down *MacColl v. Missouri State Highway Patrol*, WD84739, 2022 WL 1309988 (Mo. App. W.D. May 3, 2022), which generally affirmed that "[t]he registration requirements of [MO-]SORA are lifetime registration requirements, unless … narrow criteria are met." *Id*. at *4 (quoting *Horton v. State*, 462 S.W.3d 770, 774 (Mo. App. S.D. 2015)). Although, *MacColl* is still subject to a motion for rehearing or transfer as of the date we decide this case, it does not affect our analysis or disposition here.

**E.      Missouri cases interpreting and applying § 589.400.1(7).**

Several Missouri appellate court decisions have interpreted and applied § 589.400.1(7), including two of the three cases cited by the circuit court in its Judgment.  Although the primary case relied upon by the circuit court was *Selig*, which was decided in April 2020 (*after* the 2018 Amendments went into effect), the Western District's decision in *Selig* relied on several prior cases interpreting and applying § 589.400.1(7) *prior to* the effective date of the 2018 Amendments. Therefore, in analyzing how the Western District in *Selig* ultimately reached its key legal conclusions, we must carefully examine the evolution of how Missouri courts have interpreted and applied § 589.400.1(7), both before and after the effective date of the 2018 Amendments.

1.      The pre-amendment cases.

The starting point is the Supreme Court of Missouri's decision in *Doe v. Keathley*, 290 S.W.3d 719 (Mo. banc 2009), which first interpreted § 589.400.1(7) in the context of the separate registration requirements under SORNA.  In *Keathley*, the Supreme Court addressed whether several sex offenders who were convicted of their respective offenses before MO-SORA went into effect on January 1, 1995, were subject to its registration requirements.  *Id*. at 719–20.  The offenders had filed a declaratory judgment action asserting that § 589.400.1(7) violates the state constitutional bar on the enactment of laws that are retrospective in operation, citing article I, section 13 of the Missouri Constitution.  *Id*. at 720.  However, the Court ultimately rejected the petitioners' claim, finding that they were "subject to the independent, federally mandated registration requirements under [SORNA]," which provides, *inter alia*, that "[a] sex offender shall register … in each jurisdiction where the offender resides."  *Id*. (quoting 42 U.S.C. § 16913[17]).

---

[17] *See* 34 U.S.C. § 20913.

After finding that the petitioners were indeed subject to SORNA due to the nature of their offenses,

*Keathley* concluded as follows:

> Therefore, SORNA imposes an independent obligation requiring respondents to register as sex offenders in Missouri. The independent registration requirement under SORNA operates irrespective of any allegedly retrospective state law that has been enacted and may be subject to the article I, section 13 ban on the enactment of retrospective state laws.

*Id.* Accordingly, the Missouri Supreme Court denied the petitioners' claims for declaratory relief, holding that they were not exempt from registration under MO-SORA. *Id.* at 720–21.

Next, the Supreme Court of Missouri in *Doe v. Toelke*, 389 S.W.3d 165 (Mo. banc 2012), addressed the similar claim of a sex offender who was convicted prior to the enactment of MO-SORA, as he also argued that the new statute was unconstitutional as applied to him due to its retrospective operation. In addressing the offender's argument, *Toelke* initially noted that "[§] 589.400.1 provides that the lifetime registration requirements of '[MO-SORA] shall apply to' any person who meets certain conditions." *Id.* at 167 (alterations added). Specifically, these registration requirements apply to "[a]ny person who … has been or is required to register in another state or has been or is required to register under tribal, federal, or military law…." *Id.* (quoting § 589.400.1(7), RSMo (2012)) (alterations in original). The Supreme Court reaffirmed its prior holding in *Keathley*, specifically noting that "SORNA imposes an independent, federally mandated registration requirement." *Id.* (citing *Keathley*, 290 S.W.3d at 720). Thus, *Toelke* ultimately held that article I, section 13 of the Missouri Constitution does not prohibit the application of MO-SORA to "those individuals who are or have been subject to the independent registration requirements of SORNA." *Id.* (citing *Keathley*, 290 S.W.3d at 720). In further explaining its rationale, *Toelke* concluded as follows:

> When, as in this case, the state registration requirement is based on an independent federal registration requirement, article I, section 13 is not implicated because the

state registration requirement is not based solely on the fact of a past conviction. Instead, the state registration requirement is based on the person's **present status** as a sex offender who "has been" required to register pursuant to SORNA. [Petitioner] Doe has been required to register pursuant to SORNA and, therefore, presently is required to register pursuant to [MO-]SORA.

*Id.* (emphasis and alterations added). Thus, the Supreme Court held that MO-SORA's registration requirements do not violate article I, section 13 as applied to the sex offender. *Id.*

Following the two seminal decisions of *Keathley* and *Toelke*, the Eastern District of this Court issued two decisions that re-affirmed the general rule in those cases. First, in *Doe v. Neer*, 409 S.W.3d 451 (Mo. App. E.D. 2013), this Court recognized that *Keathley* and *Toelke* "discuss the interplay between the state registration requirement found in [§] 589.400.1(7) of [MO-]SORA and the federal registration requirement of SORNA found in 42 U.S.C. § 16913(a)[18]," *id.* at 455 (footnote added), and ultimately held that the petitioner was required to register pursuant to the separate registration requirements of both MO-SORA and SORNA, *id.* at 458–59.

Second, in *James v. Missouri State Highway Patrol*, 505 S.W.3d 378 (Mo. App. E.D. 2016), this Court re-affirmed the general rule set forth in *Keathley* and *Toelke*, and held that even if the petitioner met the requirements for removal from the Registry pursuant to §§ 589.400.8 and 589.400.9, RSMo (2016), "he still has a duty to register under the federally mandated requirement of SORNA." *Id.* at 383. *James* specifically recognized that "[§] 589.400.1(7) in Missouri dictates the [MO-]SORA lifetime registration requirements for any offender who 'has been or is required to register' under federal law. Any duty to register under SORNA triggers [MO-]SORA's lifetime registration requirements pursuant to [*Toelke*]." *Id.* (alternations added) (citation omitted). In this regard, *James* further noted that "Petitioner's status as a SORNA sex offender triggers [MO-]SORA's lifetime registration requirement," and again cited § 589.400.1(7), RSMo (2016). *Id.*

---

[18] *See* 34 U.S.C. § 20913(a).

Finally, *James* concluded that, "[p]ursuant to Missouri's statute, Petitioner is required to register as a sex offender in Missouri for life even after his federal registration requirement expires." *Id.*

With this important backdrop, the most significant pre-amendment case is the Western District's decision in *Wilkerson*, which further examined the so-called "synergistic interplay" between § 589.400.1(7), RSMo (2017), and the SORNA registration requirements. 533 S.W.3d at 761. In *Wilkerson*, the sex offender filed a petition to be removed from the Registry, arguing that she was entitled to removal pursuant to § 589.400.8, RSMo (2017), because more than two years had passed since she was required to register, and she otherwise satisfied the conditions for removal. *Id.* at 756–58. Over the State's opposition, the circuit court initially granted the offender's request. *Id.* at 757. On appeal, however, the Western District reversed, finding that although the offender otherwise satisfied the conditions for removal under § 589.400.8 of MO-SORA, she could not be granted this relief due to her separate registration requirement under § 589.400.1(7), RSMo (2017). *Id.* at 761–62. In reaching this decision, the Western District in *Wilkerson* carefully examined prior precedent, including *Keathley*, *Toelke*, and more. *Id.* at 759–60. Thus, *Wilkerson* held that because the offender was "subject to an independent State registration obligation under § 589.400.1(7)," she was not eligible for removal from the Registry pursuant to § 589.400.8, RSMo (2017). *Id.* at 760. *Wilkerson* further held that the circuit court misapplied the law by ordering the removal of her name from the Registry, and cited several additional cases in support. *Id.*

However, this did not conclude the Western District's analysis in *Wilkerson*. The court further acknowledged that there was "some logic" to the holding of the several cases it had cited, *id.*, noting that "[SORNA] provides for the withholding of certain federal funding to any State 'that fails, as determined by the Attorney General, to substantially implement this subchapter,'"

18

*id*. at 761 (quoting 34 U.S.C. § 20927(a)). *Wilkerson* further noted that because the petitioner was

a tier I offender under SORNA, she was required to register for fifteen years, unless she established

that she had a "clean record," in which case she was required to register for ten years. *Id*.

Nevertheless, *Wilkerson* observed that if the offender was permitted to remove her name from the

Registry after just two years pursuant to § 589.400.8, RSMo (2017), "the State would arguably be

failing to 'substantially implement' SORNA's provisions, endangering Missouri's federal

funding." *Id*. In this regard, *Wilkerson* continued: "We see no indication that the General

Assembly intended not to fully discharge the State's obligations under SORNA, by allowing

offenders like Wilkerson to obtain early release from their registration obligations." *Id*.

Finally, and more to the point, the Western District in *Wilkerson* readily admitted that the

result it reached was "troubling." *Id*. In explaining its concern, *Wilkerson* explained:

> Under Missouri law considered in isolation, Wilkerson was entitled to petition for
> release from registration requirements within two years of conviction (because she
> was under nineteen, and committed a non-violent offense against a thirteen-year-
> old victim). § 589.400.8. To implement SORNA, the State was required to subject
> Wilkerson to registration for at least the minimum time period required by federal
> law: either ten or fifteen years, depending on whether Wilkerson maintained a
> "clean record." 34 U.S.C. §§ 20915(a), (b). Under the interpretation placed on
> § 589.400.1(7) in *Doe v. Tolke*, …, however, an offender is subject to a *lifetime*
> registration obligation under State law, if he or she was *ever* required to register
> under federal law. Therefore, what began as a conviction for which Wilkerson was
> eligible for release from registration within two years, will now subject her to a
> *lifetime* registration obligation, based on the synergistic interplay between federal
> and State law. The lifetime registration obligation which results from *Toelke* is far
> longer than the registration obligation imposed by *either* State or federal law,
> considered in isolation. It is not clear that the General Assembly intended that an
> offender's registration obligation would "ratchet up" in this way.

*Id*. (citation omitted) (emphases in original). Accordingly, the Western District reversed and

remanded to the circuit court with directions to dismiss Wilkerson's petition. *Id*. at 761–62.

Finally, the Southern District in *Khatri v. Trotter*, 554 S.W.3d 482 (Mo. App. S.D. 2018),

which was decided just before the 2018 Amendments went into effect, also adopted the general

19

rule set forth in *Keathley* and *Toelke*, specifically noting that it was "constitutionally bound" to follow those cases because they are "the most recent decisions of the Supreme Court of Missouri on this issue." *Id*. at 485 (citing *State Farm Mut. Auto Ins. Co. v. Zumwalt*, 825 S.W.2d 906, 908 (Mo. App. S.D. 1992)). *Khatri* also cited the Eastern District's decision in *James* and the Western District's decision in *Wilkerson* in ultimately holding that a tier I sex offender under SORNA, whose federal registration obligation had also expired, was nonetheless required to register for life due to his registration requirement under § 589.400.1(7). *Id*.

  2.  <u>The lone post-amendment case—*Selig v. Russell*</u>.

  As briefly discussed above, the Western District's decision in *Selig*, 604 S.W.3d at 817, which was decided in April 2020, is the only post-amendment case to date to directly address the impact of § 589.400.1(7) in light of the 2018 Amendments. Crucially, *Selig* did <u>not</u> involve determining whether a tier I or tier II sexual offender was eligible for *removal* from the Registry pursuant to § 589.401 after having served the appropriate time thereon; rather, *Selig* involved determining whether the offender was *exempt* from registration in the first place, which is possible under § 589.400.9 for specified offenses, including the offense for which that petitioner was convicted—furnishing pornographic material to a minor. *Id*. at 818–19. The circuit court granted the offender's request for an exemption pursuant to § 589.400.9(2)(c), but the Western District ultimately reversed and remanded, finding that although the offender was indeed exempt from registration pursuant to § 589.400.9(2)(c), the circuit court had failed to consider whether the offender was nonetheless required to register pursuant to § 589.400.1(7), which, in turn, required determining whether the offense was subject to SORNA. *Id*. at 825.

  On appeal, the State admitted that the offender was generally exempt from registration pursuant to § 589.400.9(2)(c), but argued that he was nonetheless required to register pursuant to

§ 589.400.1(7). *Id*. at 819–20. In addressing the State's argument, the Western District began by acknowledging that there were two "registration laws" at issue in the case, MO-SORA and SORNA, and briefly analyzed the history of both. *Id*. at 820–21. Most importantly, *Selig* noted that, "[i]f a Missouri resident is a 'sex offender' pursuant to the terms of SORNA, SORNA imposes upon such a person an 'independent, federally mandated registration requirement' which triggers the individual's duty to register in Missouri pursuant to [§] 589.400.1(7)." *Id*. at 821 (citing *Neer*, 409 S.W.3d at 455). In this regard, *Selig* further stated that, "regardless of the other terms of MO-SORA, [§] 589.400.1(7) acts as an 'independent' requirement for registration." *Id*.

After discussing how certain federal funding is tied to Missouri's compliance with SORNA, the Western District addressed the offender's argument that a separate registration system pursuant to § 589.400.1(7) creates an "illogical result," since the legislature could not have intended to exempt his offense from registration "but also require registration for that same offense under a general provision incorporating the federal act." *Id*. at 822. However, the court dismissed this argument, noting that, "[w]here federal funding is tied to substantial compliance with SORNA registration requirements, it is not unreasonable that Missouri would adopt a 'catch-all' provision allowing Missouri to fully comply with the registration requirements of SORNA without having to amend MO-SORA every time the federal government chose to amend SORNA." *Id*.

Next, the Western District in *Selig* acknowledged that this "dual system" has the potential "to impose more stringent registration requirements on an offender than Missouri would have otherwise imposed," but noted that this result has previously been "examined and explained" in its prior 2017 decision in *Wilkerson*. *Id*. After summarizing the relevant facts and holding of *Wilkerson*, *Selig* noted that, "because [§] 589.400.1(7) requires registration for any offender who 'has been or is required to register under tribal, federal, or military law,' Missouri has in effect

21

created a **<u>lifetime</u>** registration requirement for anyone who has ever been required to register under SORNA." *Id*. at 823 (emphasis added) (citing *Wilkerson*, 533 S.W.3d at 761, and *James*, 505 S.W.3d at 378). In this regard, *Selig* explained: "Even if an offender is eligible for removal under SORNA and under MO-SORA, they will still be a person who 'has been' required to register under SORNA and thus required to register pursuant to [§] 589.400.1(7) for their **<u>lifetime</u>**." *Id*. (emphasis added) (citing *Toelke*, 389 S.W.3d at 167).

The Western District in *Selig* also noted that *Wilkerson* acknowledged the result it had reached was "troubling." *Id*. However, *Selig* further explained that the alternative was to allow the offender "to obtain release from registration after two years, even though SORNA requires registration for fifteen years," which would "arguably be failing to 'substantially implement' SORNA's provisions, endangering Missouri's funding." *Id*. (citing *Wilkerson*, 533 S.W.3d at 761). *Selig* then addressed the offender's argument that *Wilkerson* and other pre-amendment cases no longer have precedential value because of the 2018 Amendments, including the exemption provisions of § 589.400.9 and the new three-tiered offender system. *Id*. at 824. Specifically, the offender in *Selig* argued that MO-SORA must now be construed differently because, "otherwise, the addition of the exemptions of section 589.400.9 would have no effect." *Id*. In response, however, the Western District noted that although the General Assembly indeed made "a number of large substantive changes" to MO-SORA, they did not amend the language of § 589.400.1(7). *Id*. More to the point, *Selig* emphasized that several cases interpreting § 589.400.1(7) "creat[ed] a **<u>lifetime</u>** registration requirement if a person has ever met the registration requirements of SORNA." *Id*. (emphasis added). In addition, *Selig* explained that this provision "still requires that a person must register if he or she '*has been* or is required to register under tribal, federal, or military law[.]'" *Id*. (emphasis and alteration in original). *Selig* further noted that "[t]he legislature

22

was aware of the Court's interpretation of this phrase and yet chose to make no changes to this provision." *Id*.

Next, the Western District in *Selig* attempted to further address the offender's argument that its interpretation of § 589.400.1(7) would effectively nullify the relevant 2018 Amendments, noting that even though the amendments *may* have no effect as applied to this offender—because it was an issue "still yet to be decided"—"it does not follow that the [2018 A]mendments had no effect in all cases." *Id*. In this regard, *Selig* stated that "[t]here still may be those persons whose offense is exempt pursuant to [§] 589.400.9, who do not otherwise have SORNA registration requirements, and are thus exempt from all registration under MO-SORA." *Id*.

Finally, and perhaps most importantly for purposes of this case, *Selig* stated that the facts of the case before it, which involved a request for an *exemption* pursuant to § 589.400.9, were <u>not</u> distinguishable from the prior cases interpreting § 589.400.1(7), which involved requests to be *removed* from the Registry. *Id*. The Western District noted that its interpretation of § 589.400.1(7) "remains the same," as it believed the General Assembly did not intend to risk the state's federal funding. *Id*. Furthermore, *Selig* noted that Missouri courts must "consider, determine, and apply the registration requirements of SORNA through application of [§] 589.400.1(7) ***regardless of the other terms of MO-SORA***." *Id*. (emphasis added).

As noted above, to date, *Selig* is the only post-amendment case to directly interpret § 589.400.1(7) in light of the 2018 Amendments. However, we briefly observe that two post-amendment cases, one from the Western District and one from the Eastern District, affirmed circuit court decisions ***granting*** removal petitions filed by tier I sex offenders pursuant to § 589.401, thus implicitly recognizing that tier I and tier II sex offenders are <u>not</u> subject to lifetime registration

pursuant to § 589.400.1(7).[19]  In addition, there are three other post-amendment cases which did not grant the removal petitions but nonetheless contain language generally supporting the conclusion that tier I and tier II sex offenders are <u>not</u> subject to lifetime registration under § 589.400.1(7) in light of the 2018 Amendments.[20]

**F.**     **Registration required pursuant to § 589.400.1(7) does <u>not</u> impose a lifetime registration for tier I and II sex offenders.**

As further explained below, we conclude that § 589.400.1(7) should **not** be interpreted as imposing a lifetime registration obligation on tier I and II sexual offenders under MO-SORA, notwithstanding the Western District's April 2020 decision in *Selig* and the pre-amendment cases cited therein.  Rather, we believe the legislature intended that tier I and II sexual offenders may file a petition for removal from the Registry pursuant to § 589.401 after they have served the appropriate time thereon (i.e., either 10 or 15 years for tier I offenders, or 25 years for tier II offenders).

Our core analysis begins with the plain language of § 589.400.1(7), which simply provides that §§ 589.400 to 589.425 (the MO-SORA registration requirements) apply to, *inter alia*, any person who "has been or is required to register under tribal, federal, or military law."  We view § 589.400.1(7) as only specifying one subset of individuals who are **_generally subject_** to MO-SORA, and nothing more.  Conversely, § 589.400.1(7) is also noteworthy for what it does <u>not</u>

---

[19] *See generally Dixon*, 583 S.W.3d at 521; and *Bacon*, 602 S.W.3d at 245.

[20] *See Hixson*, 611 S.W.3d at 925–26 (recognizing that, "to account for the fact that newly classified tiers I and II offenders no longer are required to remain on the registry for their lifetimes, [MO-]SORA allows those offenders to seek removal under [§] 489.400.10," and that the "[t]he mechanism for seeking removal is set forth in [§] 589.401"); *J.B.*, 632 S.W.3d at 863–64 (recognizing that, "[t]he 2018 amendments [to MO-SORA] specified that only offenders in the highest tier—tier III—would be subject to a lifetime registration obligation" (quoting *Dixon*, 583 S.W.3d at 525), and further recognizing that, "[s]exual offenders in tiers I and II are eligible to petition for removal from the registry after fifteen and twenty-five years, respectively" (citing § 598.400.4)); and *Austin*, 638 S.W.3d at 611 (generally recognizing that "[§ 589.401.1] allows any person on the sexual offender registry to petition the circuit court to have his name removed from the registry," and that such petition "may only be made ten years after the person was required to register if the underlying sexual offense was a 'Tier I' offense").

specify (expressly or impliedly)—the length of time that any person who is generally subject to MO-SORA must remain on the Registry. Rather, that issue is expressly addressed in other provisions of MO-SORA, namely §§ 589.400.4, 589.401.4, and 589.401.5. When viewed in totality, tier I and tier II sex offenders who are required to register by virtue of § 589.400.1(7) may take advantage of the new removal provisions of § 589.401, provided that the offender has also fully complied with SORNA's duration of registration requirements, as set forth in 34 U.S.C. § 20915. Likewise, tier I and tier II sex offenders now benefit from § 589.401.17, which, as further explained below, prevents an eternal registration/removal loop for those offenders ultimately removed pursuant to § 589.401.1. In short, we see nothing in the plain language of § 589.400.1(7), or elsewhere in MO-SORA, that indicates the General Assembly intended to impose a lifetime registration obligation on tier I and tier II sex offenders, especially considering that SORNA likewise does not impose a lifetime registration obligation on all persons subject thereto (only tier III offenders), and that Missouri's new three-tiered system now mirrors SORNA's three-tiered system. *See Hixson*, 611 S.W.3d at 925 (recognizing that the 2018 Amendments "align" MO-SORA more closely with SORNA). If the General Assembly had intended for all sex offenders to register for their lifetime, it either would not have amended MO-SORA to include a new three-tiered system or would have expressly stated otherwise; however, § 589.400.1(7) simply is not the source of a lifetime registration obligation (or a registration obligation of any duration), and we cannot ignore the other provisions of MO-SORA that clearly provide otherwise (*see* §§ 589.400.4 and 589.401.17), including the new removal provision for tier I and tier II offenders under § 598.401.4(1) and (2).

In addition to our interpretation of the plain language of § 589.400.1(7), we must address the two key cases relied upon by the circuit court below in holding that Smith was required to

25

remain on the Registry for his lifetime, namely *Selig* (a post-amendment case), which, in turn, relied on *Wilkerson* (a pre-amendment case). Of course, *Wilkerson* relied on several other pre-amendment cases, including *Keathley* and *Toelke*, in reaching its interpretation of § 589.400.1(7), and thus, those cases must also be considered. Although the circuit court's decision in this case would be understandable if the relevant discussion in *Selig* regarding § 589.400.1(7) could simply be taken for granted, we find that the circuit court's reliance on *Selig* was nonetheless erroneous because we believe the relevant discussion in *Selig*, albeit dicta (as further explained below), is incorrect. The circuit court's decision in this case also failed to account for the plain language of the *current* version of MO-SORA, and instead relied on prior decisions that interpreted and applied *pre-amendment* versions of the statute. To summarize, we believe that *Selig* should not be followed in cases involving a tier I or tier II sex offender seeking removal pursuant to § 589.401 after serving the appropriate time on the Registry under MO-SORA <u>and</u> SORNA. As for *Wilkerson* and the other pre-amendment cases, due to the 2018 Amendments, we conclude that they are no longer controlling authority with respect to their interpretation of § 589.400.1(7) as applied to tier I and II sex offenders.

Our primary disagreement with *Selig* is that the Western District did not account for the fact that all of the pre-amendment cases upon which it relies (i.e., *Keathley*, *Toelke*, *James*, *Wilkerson*, and *Khatri*) held that § 589.400.1(7) required lifetime registration because, at the time each of those cases were decided, MO-SORA required **all** sex offenders to register for their lifetime, *see* § 589.400.3, RSMo (2005–2017), with very limited exceptions, *see* §§ 589.400.7 and 589.400.8, RSMo (2005–2017). Therefore, since Missouri had not yet adopted the current three-tiered system (which substantially altered the entire registration framework in Missouri), we

26

believe these pre-amendment cases are no longer relevant in interpreting § 589.400.1(7) as to tier I and tier II sex offenders, and should not be followed for that purpose.

At this juncture it is appropriate to note that the Western District's entire discussion in *Selig* regarding whether § 589.400.1(7) still imposes a lifetime registration obligation on all sex offenders who are subject to SORNA, despite the 2018 Amendments, is dicta. The Western District did not decide whether the sex offender in that case was actually subject to SORNA (and thus, whether he was ultimately required to register in Missouri pursuant to § 589.400.1(7)); rather, the Western District remanded to the circuit court for that purpose. Therefore, the Western District's discussion regarding § 589.400.1(7) was merely provided as *guidance* to the circuit court in the event that the offender was ultimately deemed to be subject to SORNA on remand. Furthermore, the Western District's discussion in *Selig* regarding § 589.400.1(7) is also dicta with respect to this particular case because *Selig* involved a petition for *exemption* from the Registry pursuant to 589.400.9(2)(c), whereas this case involves a petition for *removal* pursuant to § 589.401. That said, we disagree with Western District's comment that, despite the foregoing factual and/or procedural distinction, its "statutory interpretation remains the same." *Selig*, 604 S.W.3d at 824. We also disagree with the Western District's belief that it must interpret the registration requirements of MO-SORA, including § 589.400.1(7), "regardless of the other terms of MO-SORA." *Id*. We are concerned that Missouri circuit courts, in the absence of any other post-amendment appellate court decisions interpreting § 589.400.1(7) in a *removal* case brought pursuant to § 589.401, may continue denying removal requests, on the basis of *Selig*, that otherwise should be granted—exactly as the circuit court did in this case. Moreover, we are aware of at least one additional case, with facts virtually identical to those of this case, where the same circuit court likewise denied another tier I sex offender's removal petition on the exact same legal basis—citing

27

*Selig* and *Wilkerson*.[21] Therefore, even though the Western District's discussion in *Selig* regarding § 589.400.1(7) is arguably dicta, we emphasize our disagreement with this particular aspect of *Selig* in order to avoid other circuit courts incorrectly denying removal petitions pursuant to § 589.401 on the basis of the aforementioned dicta.

We further note that in interpreting and applying § 589.400.1(7), we believe the Western District in *Selig* did not give effect to the totality of the 2018 Amendments, namely the new three-tiered system of sex offenders set forth in § 589.414, the new registration time periods set forth in § 589.400.4, and the new removal provisions set forth in § 589.401. Although the Western District briefly acknowledged the 2018 Amendments in its opinion, the court primarily focused on the fact that the General Assembly did not amend the language of § 589.400.1(7) itself. *See Selig*, 605 S.W.3d at 824. While that is certainly true, we have a fundamentally different view of how § 589.400.1(7) should be interpreted because this particular provision cannot be viewed in isolation. As noted in our primary discussion of *Selig* above, the Western District specifically stated: "Missouri courts must consider, determine, and apply the registration requirements of SORNA through application of [§] 589.400.1(7) ***regardless of the other terms of MO-SORA***," 604 S.W.3d at 824 (emphasis added)). Presumably, the Western District essentially took the position that, notwithstanding the 2018 Amendments, a sex offender required to register pursuant to SORNA will *always* be someone who "has been" required to register under federal law, and thus, can never escape the grasp of § 589.400.1(7). However, this approach would disregard § 589.401.17, as well as the other 2018 Amendments, which we believe the General Assembly enacted with the intent of preventing an eternal registration/removal loop for tier I and tier II sex

---

[21] *See generally Ford v. Missouri State Highway Patrol*, ED109958, which, due to its factual and procedural similarities to this case, as well as the common legal issues addressed therein, is being decided and handed down concurrently with this opinion.

offenders. Regardless of the specific thought process, the bottom line is that *Selig* followed the pre-amendment precedent established in *Wilkerson*, which recognized that § 589.400.1(7), RSMo (2015), imposed a lifetime registration requirement on the offender in that case even though she was otherwise entitled to removal after two years under the then-existing removal provision in MO-SORA (i.e., § 589.400.8, RSMo (2015)). Nevertheless, we believe that *Wilkerson* cannot be taken at face value today, but rather, must also be viewed in light of all the 2018 Amendments, which fundamentally altered the length of time certain sex offenders must now remain on the Registry.

As this Court expressly recognized in *Bacon v. Missouri State Highway Patrol*, "[t]he legislature intended for those currently on the registry to get the benefit of the new ***shorter registration time periods*** for offenses that are now deemed to be in the lower severity tiers." 602 S.W.3d at 247 (emphasis added) (relying on § 589.400.10, RSMo (2018)); *see also Hixson*, 611 S.W.3d at 925 (expressly recognizing that the 2018 Amendments "provided a mechanism for tiers I and II offenders to be removed from the registry," citing §§ 589.400.10 and 589.401). In addition, this Court in *Hixson* specifically recognized that the 2018 Amendments "align" MO-SORA more closely with SORNA, 611 S.W.3d at 925, which already employed a three-tiered system with varying registration lengths, *James*, 505 S.W.3d at 381.

However, if § 589.400.1(7) is interpreted as requiring lifetime registration for tier I and tier II offenders, as *Selig* suggests in dicta, the entire new three-tiered system instituted with the 2018 Amendments (especially the new removal provisions for tier I and tier II offenders contained in *§ 589.401*), would effectively be rendered meaningless—contrary to the basic rule of statutory construction that "[w]e never construe a statute in a way 'that would moot the legislative changes because the legislature is never presumed to have committed a useless act.'" 604 S.W.3d at 824

(quoting *Wilson v. Progressive Waste Solutions of Mo., Inc.*, 515 S.W.3d 804, 810 (Mo. App. E.D. 2017)). In *Hixson*, we similarly recognized that "[n]o portion of a statute is read in isolation, but rather is read in context to the entire statute, ***harmonizing all provisions***." 611 S.W.3d at 926 (alteration in original) (emphasis added). However, in our view, the dicta in *Selig* erroneously perpetuates the pre-amendment precedent set forth in *Wilkerson* that **all** sex offenders who are required to register pursuant to § 589.400.1(7) must still register for their life, effectively nullifying the 2018 Amendments, which Missouri courts have expressly recognized were intended to benefit sex offenders who fall into tier I and tier II status. *See Bacon*, 602 S.W.3d at 247; *Dixon*, 583 S.W.3d at 525; and *Hixson*, 611 S.W.3d at 925-26.

We again note that *Selig* briefly commented that "[t]here still may be those persons whose offense is exempt pursuant to [§] 589.400.9, who do not otherwise have SORNA registration requirements, and are thus exempt from all registration under MO-SORA." 604 S.W.3d at 824. However, *Selig* did not further expound on who these fully exempt persons might be. Furthermore, this comment in *Selig* does not address tier I and tier II sex offenders who are seeking *removal* pursuant to § 589.401 after having served the appropriate time on the Registry, as we conclude that the General Assembly fully intended for these offenders to benefit from the new removal provisions implemented with the 2018 Amendments, notwithstanding the fact that they may have an "independent" registration obligation pursuant to § 589.400.1(7), as originally established in *Keathley*, 290 S.W.3d at 720, and *Toelke*, 389 S.W.3d at 167.

Moreover, if the Western District's interpretation of § 589.400.1(7) in *Selig* prevails in removal cases pursuant to § 589.401, this interpretation would not only disregard the general provisions of § 589.401, but also the specific impact of sub-section .17 of this new section, which expressly provides that once a sex offender's name is removed from the Registry pursuant to a

30

petition filed under § 589.401, they are <u>not</u> required to re-register unless they are required to register "for an offense that was different from that listed on the judgment of removal." In our view, this new provision was specifically intended to prevent tier I and tier II sex offenders from getting caught in an eternal registration/removal loop, in which Smith finds himself due to the circuit court's interpretation of § 589.400.1(7) based on its application of the prior opinions in *Wilkerson* and *Selig*. As *Wilkerson* first noted, 533 S.W.3d at 761, and as *Selig* repeated, 604 S.W.3d at 626–27, we likewise find any such results "troubling." However, we believe the 2018 Amendments, including § 589.401.17, were enacted to break that eternal registration/removal loop for tier I and II sex offenders seeking permanent removal pursuant to § 589.401, and decide this case with that in mind.[22]

Although a highly nuanced point, we observe one specific issue in connection with the Western District's decision in *Wilkerson*, 533 S.W.3d at 755, that warrants mentioning. That offender's petition for removal from the Registry was premised on certain language in MO-SORA that simply is not present in the 2018 Amendments. Specifically, § 589.400.8, RSMo (2017), permitted a petition for removal by "any person ***on the sexual offender registry*** for having been convicted of, found guilty of, or having pled guilty or nolo contendere to" certain offenses specified therein. This language permitted the Western District in *Wilkerson* to deny her petition for removal, since the offender was "on the sexual offender registry" for one of the offenses listed in § 589.400.8, RSMo (2017). However, the 2018 Amendments do not use the key language "on the sexual offender registry" as the basis for permitting a removal petition pursuant § 589.401; rather, removal petitions are based on the tier level of the offense. Thus, *Wilkerson* is

---

[22] Although not addressed in the *Selig* opinion, we also note that if the Western District's proposed approach with respect to § 589.400.1(7) is taken to its logical conclusion, sex offenders who are otherwise eligible for removal under § 589.400.3(1) (i.e., individuals whose convictions have been reversed, vacated, or set aside) would likewise be subject to lifetime registration, which we also believe would be contrary to the intent of the 2018 Amendments.

distinguishable on this basis. This distinction is also pertinent to the applicability of *Selig*, as the exemption petition in that case was premised on similar language contained in the current version of MO-SORA. Specifically, § 589.400.9(2)(c), permits "any person currently required to register for" the offense of furnishing pornographic materials to a minor to file a petition for exemption, which the offender did, and that petition was denied. Again, however, Smith's removal petition pursuant to § 589.401 is not based on any key language like that found in § 589.400.9(2)(c), but rather, is solely based on his status as a tier I sex offender who had served the appropriate time on the Registry. Accordingly, *Selig* is likewise distinguishable on this basis.

Finally, we note that at oral argument, when pressed to explain what specific language in § 589.400.1(7) calls for a lifetime registration obligation of a tier I sex offender (such as Smith), the State argued that the words "has been," as used in the phrase "***has been*** or is required to register under tribal, federal, or military law," effectively creates this requirement. Although several pre-amendment cases addressing this issue have highlighted the "has been" language in their discussion of § 589.400.1(7),[23] the State's argument is not well taken. While the State did not fully expound on this argument, presumably the "has been" language creates a lifetime registration obligation because any offender who was ever required to register under SORNA will ***always*** be someone who "has been" required to register, and thus, they must register forever. However, we believe the function of § 589.400.1(7) is not to specify the ***duration*** of any offender's registration requirements; rather, this provision simply specifies who is ***generally subject*** to MO-SORA, and the duration of their registration obligation is addressed elsewhere in the statute. Accordingly, the

---

[23] *See, e.g.*, *Toelke*, 389 S.W.3d at 167 (noting that, "the state registration requirement is based on the person's present status as a sex offender who 'has been' required to register pursuant to SORNA" and, therefore, "presently is required to register pursuant to [MO-]SORA"), and *Selig*, 604 S.W.3d at 823 (similarly noting that, "[e]ven if an offender is eligible for removal under SORNA and under MO-SORA, they will still be a person who 'has been' required to register under SORNA and thus required to register pursuant to [§] 589.400.1(7) for their lifetime").

State's interpretation of the "has been" language contained in § 589.400.1(7) simply cannot be harmonized with the rest of MO-SORA in light of the 2018 Amendments, especially the protection afforded by § 589.401.17 to prevent an eternal registration/removal loop for tier I and tier II sex offenders. *Hixson*, 611 S.W.3d at 926 (recognizing that "[n]o portion of a statute is read in isolation, but rather is read in context to the entire statute, ***harmonizing all provisions***" (alteration in original) (emphasis added)).

For these reasons, we conclude that, as a result of the 2018 Amendments, all pre-amendment cases are no longer controlling authority to the extent they hold that § 589.400.1(7) effectively requires lifetime registration for tier I and tier II sex offenders who have been properly registered for the appropriate time under MO-SORA <u>and</u> SORNA and otherwise satisfy the requirements for removal under § 589.401. Rather, courts should evaluate and determine whether an offender who has filed a proper petition pursuant to § 589.401 is a tier I or tier II offender under both MO-SORA <u>and</u> SORNA, using the then-applicable statutory language of both, and grant or deny the petition accordingly. Of course, if a sex offender is a tier III offender under <u>either</u> MO-SORA or SORNA, then such a petition should be denied, barring any future changes to the registration periods under MO-SORA or SORNA that would necessitate a different result.

**G.    The circuit court erred in dismissing Smith's Petition.**

Based on the undisputed factual record in this case, we find that: (1) Smith is a tier I sex offender under both MO-SORA (i.e., § 589.414.5) and SORNA (i.e., 34 U.S.C. § 20911(2)); (2) Smith has been on the Registry for at least 15 years; and (3) Smith has otherwise satisfied all the requirements for removal from the Registry pursuant to § 589.401. Furthermore, for the reasons set forth above, we conclude that the General Assembly did not intend for § 589.400.1(7) to impose a lifetime registration obligation on tier I or tier II sex offenders under MO-SORA and SORNA

33

who have served the required time on the Registry pursuant to § 589.400.4 and .5 <u>and</u> 34 U.S.C. § 20915(a) and (b), and have otherwise satisfied the requirements for removal from the Registry pursuant to § 589.401. Therefore, the circuit court erred in declaring and applying the law to the extent it relied on dicta in the Western District's decision in *Selig*, 604 S.W.3d at 817, suggesting that tier I and tier II sex offenders are still required to register for their lifetime pursuant to § 589.400.1(7) if they are required to register under SORNA, and thus, may not petition for removal pursuant to § 589.401. *Isom*, 429 S.W.3d at 439 (citing *Murphy*, 536 S.W.2d at 32). Accordingly, the circuit court erred in denying Smith's Petition.

Point granted.

## V.  Conclusion

For these reasons, the Judgment is REVERSED and the case is REMANDED to the circuit court with directions to grant Smith's Petition and order his name removed from the Registry without further delay.

_____
Kelly C. Broniec, Judge

Kurt S. Odenwald, P.J. and
John P. Torbitzky, J. concur.

34